JOSHUA E. KIRSCH (179110)
GIBSON ROBB & LINDH LLP
1255 Powell Street
Emeryville, California 94608
Telephone:   (415) 348-6000
Facsimile:    (415) 348-6001
Email:          jkirsch@gibsonrobb.com

Attorneys for Plaintiff
ZURICH AMERICAN INSURANCE
COMPANY a/s/o Thrive Market, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, a corporation, as subrogee of "a/s/o" Thrive Market, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>STI GLOBAL, INC., a corporation; and DOE ONE through DOE TEN,<br><br>Defendants. | Case No. 5:26-cv-00910<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**($219,285.43)** |

Plaintiff's complaint follows:

**<u>GENERAL ALLEGATIONS</u>**

1.  Plaintiff ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), a/s/o Thrive Market, Inc., is now, and at all times material was, a corporation, and was at all relevant times the insurer of Thrive Market, Inc. ("Thrive").  ZURICH was the insurer of the cargo that is the subject of this action, and Thrive was the owner of the cargo.

2.      Plaintiff is informed and believes and on the basis of that information and belief alleges that defendant STI GLOBAL, INC. ("STI"), is a corporation, and is now and at all times herein material was engaged in business as a motor freight broker, and/or common carrier for hire in the County of Ventura, State of California. ZURICH is a New York corporation with its principal place of business and headquarters in New York.  STI is an Ohio corporation with its principal place of business and headquarters in Ohio.

3.      The true names of defendants sued herein as DOE ONE through DOE TEN, each of whom is or may be responsible for the events and matters herein referred to, and each of whom caused or may have caused or contributed to the damage herein complained of, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will amend its complaint to show the true names of said defendants when the same have been ascertained.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1333 as there is complete diversity, and the amount in controversy exceeds $75,000.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

5.      Plaintiff is informed and believes and on the basis of such information and belief alleges that on or about June 13, 2025, defendants agreed, pursuant to a "Shipper-Broker Agreement" dated July 3, 2024 (the "Agreement") in place with Thrive, to assign and retain a motor truck carrier to transport a shipment of 2,302 carton of assorted coffee products from Oxnard, California, to Batesville, Indiana, and Hanover Township, Pennsylvania.

6.      The Agreement provided, in relevant part:

> 1.    Scope of the Agreement
> Shipper [Thrive Market, Inc.] agrees from time to time to tender shipments to Broker [STI] for transportation.  Broker agrees to transport anhy shipments tendered hereunder, at its sole cost and expense, in accordance with the distinct needs, mandates, and directions of Shipper.
>
> …

**2. Broker Services**

Broker warrants to Shipper that it shall perform the freight brokering services using personnel of required skill, experience, and qualifications and in a professional and workmanlike manner in accordance with the commercially reasonable industry standards for similar services. Broker agrees to arrange for the timely pick-up, transport, and delivery of shipments in good order, by legally authorized motor carriers (herein referred to as "Carriers") as Shipper may reasonably request. All shipments are tendered to Broker under this Agreement. Shipper may refuse or reject the use of any Carriers provided by Broker for any reason at its sole discretion. Broker shall provide Carriers that meet the following criteria without exception unless authorized in writing by Shipper:

**2.A FMCSA Authority**. Carriers shall maintain proper authority from the Federal Motor Carrier Safety Administration ("FMCSA") and any applicable other federal and any state agency to perform transportation services in intrastate or interstate commerce.

**2.B Safety.** Carriers must maintain a safety rating from the U.S. Department of Transportation that is either "Satisfactory" or "Unrated", and that agree to perform transportation of Shipper's shipments in compliance with all applicable safety laws and requirements. If a Carrier's safety rating changes to "Conditional" or "Unsatisfactory" at any time, Broker shall immediately cease using such Carrier for Shipper's shipments and shall immediately replace such Carrier with one that meets the safety rating standard set forth herein.

**2.C Insurance**. During the Term and for at least two years thereafter, Carriers and Broker shall maintain insurance in the amounts set forth as follows:

…

II. Cargo Liability - $100,000 <u>for</u> each shipment. Broker shall maintain Contingent Cargo insurance in the amount of $250,000 per shipment and Broker will be liable for loss or damage to shipments up to $250,000.

…

**8.     Liability Standards**

Broker assumes liability for the replacement cost, Shipper's/Consignor's commercial invoice or market value for loss, damage, or destruction of any all goods or property tendered to Broker by Shipper, and for the full course of carriage up to $250,000.

…

/ / /

> At Shipper's option, Broker shall either pay Shipper directly or allow Shipper to deduct from the amount Shipper owes Broker, the amount of Shipper and/or Customer's full actual loss.

…

7. Thrive performed all of its obligations under the Agreement, excepting any obligations that may have been excused. Thereafter, defendants breached and violated the Agreement, by among other acts and omissions:

    a. Communicating with and assigning the load to an unknown and fraudulent third party posing as a legitimate motor truck cargo carrier, which had none of the qualifications for authority, safety, or insurance as set forth in the Agreement.

    b. Failing to reimburse Thrive for its loss as set forth in the Agreement.

As a direct and proximate result of these breaches, the cargo was picked up by an unauthorized party, who never delivered the cargo, and the cargo was lost, presumably stolen. The value of the undelivered cargo was at least $219,285.43.

8. Prior to the shipment of the herein described cargo and prior to any loss thereto, ZURICH issued its policy of insurance whereby ZURICH agreed to indemnify Thrive, and its assigns, against its obligations for loss of or damage to said cargo while in transit, including mitigation expenses. As a result of the loss of the cargo, ZURICH became obligated to pay and did pay the owner of the cargo, and/or its assigns, $219,285.43, on account of the herein described loss.

9. Plaintiff has therefore been damaged in the sum of $219,285.43, no part of which has been paid, despite demand therefor.

/ / /

/ / /

/ / /

/ / /

/ / /

1  WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and
2  against defendants; that this Court decree payment by defendants to Plaintiff in the
3  amount of $219,285.43, together with prejudgment interest thereon, attorneys' fees
4  pursuant co contract, and costs of suit herein; and that Plaintiff have such other and
5  further relief as in law and justice it may be entitled to receive.

Respectfully submitted,

Dated: February 25, 2026   GIBSON ROBB & LINDH LLP

/s/ JOSHUA E. KIRSCH
Joshua E. Kirsch
jkirsch@gibsonrobb.com
Attorneys for Plaintiff
ZURICH AMERICAN INSURANCE
COMPANY a/s/o Thrive Market, Inc.